**No. 23-2367**

# In the
# United States Court of Appeals
## for the Seventh Circuit

COALITION FOR LIFE ST. LOUIS, doing business as Coalition Life,

*Plaintiff-Appellant,*

v.

CITY OF CARBONDALE, ILLINOIS,

*Defendant-Appellee.*

_____

Appeal from the United States District Court
for the Southern District of Illinois, No. 3:23-cv-01651-SPM.
The Honorable **Stephen P. McGlynn**, Judge Presiding.

## BRIEF AND APPENDIX OF PLAINTIFF-APPELLANT

PETER BREEN (*Counsel of Record*)
THOMAS MORE SOCIETY
309 West Washington Street
Suite 1250
Chicago, Illinois 60606
(312) 782-1680

*Counsel for Plaintiff-Appellant*
*Coalition for Life St. Louis*

 COUNSEL PRESS · (866) 703-9373          PRINTED ON RECYCLED PAPER 

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: <u>23-2367</u>

Short Caption: <u>Coalition Life v City of Carbondale</u>

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

> [ ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
<u>Coalition for Life St. Louis dba Coalition Life</u>

               _____

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
<u>Thomas More Society, Chicago, Illinois</u>

               _____

(3)    If the party, amicus or intervenor is a corporation:

        i)      Identify all its parent corporations, if any; and

               <u>None</u>

        ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

               <u>None</u>

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    <u>N/A</u>

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    <u>N/A</u>

Attorney's Signature: <u>/s/Peter Breen</u>      Date: <u>7/18/2023</u>

Attorney's Printed Name: <u>Peter Breen</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** [✔]  **No** [ ]

Address: <u>Thomas More Society, 309 W. Washington St., Ste. 1250, Chicago, Illinois 60606</u>

Phone Number: <u>312-782-1680</u>      Fax Number: <u>312-782-1887</u>

E-Mail Address: <u>pbreen@thomasmoresociety.org</u>

# TABLE OF CONTENTS

RULE 26.1 STATEMENT ..................................................................i

JURISDICTIONAL STATEMENT .........................................................1

INTRODUCTION.........................................................................2

STATEMENT OF ISSUE.................................................................4

STANDARD OF REVIEW................................................................5

STATEMENT OF THE CASE ...........................................................5

SUMMARY OF ARGUMENT ...........................................................13

ARGUMENT ............................................................................15

   I.   The City of Carbondale's Bubble Zone Ordinance violates the First Amendment as a Content-Based Speech Restriction that Fails Strict Scrutiny, as well as intermediate scrutiny, under Supreme Court precedent as clarified post-Hill v. Colorado, which must be overruled.......................................................................15

CONCLUSION ..........................................................................26

# TABLE OF AUTHORITIES

## Cases

*Agostini v. Felton,*
  521 U.S. 203 (1997) .................................................................. 4

*Brown v. Ent. Merchants Ass'n,*
  564 U.S. 786 (2011) ........................................................... 22, 23

*City of Austin, Texas v. Reagan Nat'l Advert. of Austin, LLC,*
  142 S. Ct. 1464 (2022) ....................................................... 20, 21

*Dobbs v. Jackson Women's Health Org.,*
  142 S. Ct. 2228 (2022) ................................................... 2, 13, 26

*Hague v. Comm. for Indus. Org.,*
  307 U.S. 496 (1939) .................................................................. 15

*Hill v. Colorado*
  530 U.S. 703 (2000) ......................................................... *passim*

*McCullen v. Coakley,*
  573 U.S. 464 (2014) ......................................................... *passim*

*Price v. City of Chicago,*
  915 F.3d 1107 (7th Cir. 2019) ..................................... *passim*

*Reed v. Town of Gilbert Ariz.,*
  576 U.S. 155, 163 (2015) ............................................... *passim*

*Schenck v. Pro-Choice Network of Western New York,*
  519 U.S 357 (1997) ........................................................... 23, 24

*Snyder v. Phelps,*
   562 U.S. 443 (2011) ................................................................. 15

*Texas v. Johnson,*
   491 U.S. 397 (1989) ................................................................. 22

*Thomas v. Rev. Bd. of Indiana Emp. Sec. Div.,*
   450 U.S. 707 (1981) ................................................................. 22

*Vicom, Inc. v. Harbridge Merch. Servs., Inc.,*
   20 F.3d 771 (7th Cir. 1994) ..................................................... 5

## Statutes

18 U.S.C. § 248 ............................................................................ 23

28 U.S.C. § 1291 ........................................................................... 1

28 U.S.C. §§ 1331 & 1343............................................................ 1

42 U.S.C. § 1983 .......................................................................... 1

City Code of Carbondale, Illinois, Sec. 14-4-2(H) ................................. 2, 7

## Rules

Fed. R. App. 26.1 ......................................................................... i.

Fed. R. Civ. P. 12(b)(6) ............................................................... 1, 5

## JURISDICTIONAL STATEMENT

The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, as well as 42 U.S.C. § 1983, as this matter arose under the First and Fourteenth Amendments.

This Court has jurisdiction over this appeal under 28 U.S.C. § 1291 because this is an appeal from a final order dismissing all of Plaintiff's claims under Fed. R. Civ. P. 12(b)(6), entered on July 6, 2023, and set out in a separate document on July 19, 2023. A.1-3. Plaintiff timely filed its notice of appeal on July 11, 2023, which was effective July 19, 2023. Dist. Ct. Dkt. 17, Fed. R. App. P. 4(a)(2), 4(a)(7)(A)(ii), 4(a)(7)(B).

## STATEMENT CONCERNING ORAL ARGUMENT

Oral argument is not necessary in this appeal, because the dispositive issues herein were previously decided by the Supreme Court in *Hill v. Colorado*, 530 U.S. 703 (2000), and the Seventh Circuit recently affirmed in *Price v. Chicago*, 915 F.3d 1107 (7th Cir. 2019) that *Hill* remains viable and controlling until repealed by the High Court.

## INTRODUCTION

In *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (2022), the Supreme Court rightly observed that *Roe v. Wade* had, together with its corollary in *Planned Parenthood of Southeastern Pennsylvania v. Casey,* "led to the distortion of many important but unrelated legal doctrines." *Id.* at 2275.

The Court expressly declared that one such distortion was the utterly anomalous First Amendment decision in *Hill v. Colorado*, 530 U.S. 703 (2000). *See Dobbs*, 142 S. Ct. at 2276 & n.65. In *Hill*, the Supreme Court upheld a blatantly content-based state statute virtually identical to the one enacted by the City of Carbondale here. Both make it a crime, within 100 feet of the entrance to a healthcare facility, to "approach within 8 feet of another person, without that person's consent, in order to pass a leaflet or handbill to, displa[y] a sign to, or engag[e] in oral protest, education, or counseling with [that] person…" *Hill*, 530 U.S. at 707; *see* City Code of Carbondale, Illinois, 14-4-2(H). Dist. Ct. Dkt. 1-1 at 5.

*Dobbs* cites *Hill* as the premier example of how the gravitational pull of *Roe-Casey* on the whole fabric of constitutional law had "distorted First Amendment doctrines" in particular. *Dobbs*, 142 S. Ct. at 2276.

Indeed, as Justice Scalia observed 22 years earlier in his dissent in *Hill*, "this regulation would be deemed content based *in an instant* if the case before us involved antiwar protesters, or union members seeking to 'educate' the public about the reasons for their strike." *Hill*, 530 U.S. at 742 (emphasis in original).

In *McCullen v. Coakley*, 573 U.S. 464 (2014), and *Reed v. Town of Gilbert*, 576 U.S. 155 (2015), the High Court signaled the end of the *Hill* distortion, as this Court has rightly recognized even if *Hill* remains nominally controlling. Quite simply: "*Hill* is incompatible with current First Amendment doctrine as explained in *Reed* and *McCullen*." *Price v. City of Chicago*, 915 F.3d 1107, 1117 (7th Cir. 2019).

Undeterred by the prospect of *Hill*'s demise as presaged in *McCullen*, *Reed*, and now *Dobbs*—indeed, in an obvious act of political pique in retaliation for *Dobbs*—the City of Carbondale, Illinois enacted its own "bubble zone" ordinance in January of this year, justified in part by the preamble's declaration that "in June, 2022 the United States Supreme Court overturned the right to abortion with the decision of [sic] the *Dobbs v. Jackson* [sic] case."

3

Because *Hill* "remains on the books and directly controls here," *Price*, 915 F. 3d at 1119, this Court cannot directly rectify Carbondale's determination to perpetuate *Hill*'s grave distortion of First Amendment doctrines. *Agostini v. Felton*, 521 U.S. 203, 237 (1997) (where a decision "rest[s] on reasons rejected in some other line of decisions, Courts of Appeals should follow the case which directly controls, leaving to [the Supreme] Court the prerogative of overruling [its] own decisions.").

However, *Dobbs* uniquely confirms that Carbondale's Bubble Zone is causing ongoing and actual irreparable harm as we speak. Thus, this Court should timely send this case to the Supreme Court so that Plaintiff Coalition Life and other sidewalk advocates for life can operate, not under "an entirely separate, abridged edition of the First Amendment applicable to speech against abortion," *McCullen*, 573 U.S. at 497 (Scalia, J, concurring), but under the same First Amendment that has always applied, without exception, to public forum advocates of every other lawful social or political objective in our nation.

## STATEMENT OF ISSUE

I. Whether the challenged Bubble Zone law violates the First Amendment and must be invalidated according to the Supreme Court's

current First Amendment jurisprudence as clarified in *McCullen v. Coakley*, 573 U.S. 464 (2014), and *Reed v. Town of Gilbert*, 576 U.S. 155 (2015), requiring the overruling of *Hill v. Colorado* 530 U.S. 703 (2000).

## STANDARD OF REVIEW

The standard of review of a dismissal under Fed. R. Civ. P. 12(b)(6) is de novo, accepting as true all well-pleaded factual allegations. *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 775 (7th Cir. 1994).

## STATEMENT OF THE CASE

Plaintiff-Appellant Coalition Life and its sidewalk counselors counsel, educate, pray, display signs, distribute literature, and otherwise peacefully exercise their First Amendment rights on the public sidewalks and rights-of-way outside abortion facilities and elsewhere on the public ways in the City. They offer information and assistance to women approaching abortion facilities in order to inform and assist them in choosing alternatives to entering the facilities for abortions, as well as to express their deeply held religious convictions on a matter of great public concern, indeed, a matter of life and death. Dist. Ct. Dkt. 1, Cmplt. ¶9.

Coalition Life sidewalk counselors also attempt to engage potential abortion customers in a one-on-one conversation in a calm, intimate

manner to offer information about the dangers involved in abortion and to offer alternatives to abortion and help in pursuing those alternatives. Id. ¶10.

Coalition Life's sidewalk counselors' experience has shown that it is necessary to draw as near to the women as possible so they can make eye-contact and speak from a normal conversational distance in a friendly and gentle manner. In their experience, counseling women who are considering whether to abort a child is a highly personal matter that requires an approach which easily conveys the genuine care and empathy offered by the sidewalk counselor. In addition, the alternatives to abortion that are available differ depending on the personal needs and circumstances of the individual with whom the counselor is speaking. Id. ¶11.

Additionally, ambient noise from cars, trucks, emergency vehicles, and so forth, coupled with the interference of clinic "escorts," often make it difficult for Coalition Life's sidewalk counselors to effectively communicate such an important, delicate, and consequential oral message from distances greater than five feet. Id. ¶12.

The counselors also attempt to hand helpful literature to the

women, which requires them to stand near the path of pedestrians and incoming vehicles, in order to approach and proffer pregnancy assistance and educational literature to passersby who can easily take it from an outstretched hand. Id. ¶13.

## The "Bubble Zone" Ordinance

On January 10, 2023, the City of Carbondale enacted the Bubble Zone Ordinance, adding a new section to the Disorderly Conduct Ordinance. The Bubble Zone Ordinance became codified as Section 14-4-2(H). Dist. Ct. Dkt. 1-1 at 3. The Bubble Zone became effective the day after it was enacted, January 11, 2023. Id. at 4. The challenged provision is as follows:

> A person commits the offense of disorderly conduct when he knowingly:
>
> * * *
>
> H. Knowingly [sic] approaches another person within eight feet of such person, unless such other person consents, *for the purpose of passing a leaflet or handbill to, displaying a sign to, or engaging in oral protest, education, or counseling* with such other person in the public way within a radius of 100 feet from any entrance door to a hospital, medical clinic or healthcare facility . . . (emphasis added).

Id. at 5.

The Bubble Zone creates large buffer zones, extending 100 feet in all directions from any "entrance door to a hospital, medical clinic or

7

healthcare facility" in the City, within which sidewalk counseling is effectively banned because of the prohibition on approaching within eight feet of anyone, but *only* "for the purpose of passing a leaflet or handbill to, displaying a sign to, or engaging in oral protest, education, or counseling" without that person's consent.

Because, as it boasts, Carbondale is "the hub of medical care in the Southern Illinois region,"[1] the Bubble Zone imposes the resulting vast speech-restrictive buffer zones all over the city, even though the Bubble Zone was supposedly designed only to address alleged issues at two newly operational abortion facilities in town. *See* Dist. Ct. Dkt. 1-2 (Agenda Item Details re: Ordinance).

In fact, the City identified only two reasons for the Bubble Zone: (1) that there were now daily "protests" at "reproductive healthcare facilities" (i.e., abortion facilities); and (2) that there were calls for police assistance relating to (a) trespass and (b) disorderly conduct. Id. Tellingly, there was no mention of violence, arrests, convictions for any offense, or even warnings related to unwanted approaches or alleged "harassment." Id.

---

[1] *See* https://www.explorecarbondale.com/356/Hospitals-Healthcare.

Although the Bubble Zone as recommended and submitted to the City Council on the Agenda would have imposed a buffer zone of fifty (50) feet, the Bubble Zone as adopted imposes a buffer zone of twice the radius at one hundred (100) feet. The City Attorney explained that the reason for the last-minute doubling of the radius was that the layout of the two specifically abortion-related facilities in Carbondale meant that a fifty-foot buffer zone "doesn't even get you off of the parking lot."[2] Dist. Ct. Dkt. 1, Cmplt. ¶19. In other words, due to the rural or suburban nature of Carbondale, a 100-foot buffer zone was necessary precisely to prohibit the activity of sidewalk counselors at the two abortion facilities in question.

Although not mentioned in the Bubble Zone ordinance, the City appears to have some 153 "hospitals, medical clinics, or healthcare facilities." Dist. Ct. Dkt. 1-3 (List of Healthcare Facilities). The 100-foot buffer zones around many of these facilities encompass vast stretches of public property in Carbondale. In fact, the Bubble Zone imposes significant restrictions in the public rights-of-way around at least forty (40) healthcare

---

[2] *See* Video of City Council meeting of January 10, 2023: video clip for Agenda Item 8.3 at 39:00 – 39:47, https://carbondaleil.new.swagit.com/videos/226879

facilities within the City. Dist. Ct. Dkt. 1-4 (aerial maps reflecting the extent of the 100-foot buffer zones emanating from the multiple entrance doors at these facilities).

The anti-speech zones created by the Bubble Zone ordinance infringe the free speech rights of Coalition Life pro-life sidewalk counselors and others on the public streets and sidewalks without adequate justification. There is no fit between the City's purported concern about trespass and disorderly conduct at healthcare facilities—for which there was no competent evidence before the City Council—and the creation of vast speech-free zones in the City. Moreover, the Bubble Zone's preamble makes it clear that its enactment was at least in part an official reaction against the *Dobbs* decision and the *First Amendment-protected activity of the pro-life movement* in Carbondale:

> **WHEREAS**, in June, 2022 the United States Supreme Court overturned the right to abortion with the decision of [sic] the *Dobbs v. Jackson* [sic] case; and
>
> **WHEREAS**, an increase in media and political attention as a result of the *Dobbs v. Jackson* [sic] case has resulted in an *increase in activism and opposition from groups opposing abortion access*; …

Dist. Ct. Dkt. 1-1 at 2 (emphasis added).

In fact, the City had no legitimate law enforcement or public safety

justification for the Bubble Zone at *any* location. Dedicated pro-life advocates like Coalition Life sidewalk counselors have maintained a peaceful presence outside the two abortion facilities for some time, with no mass blockades, no arrests, no convictions, and no violence. Dist. Ct. Dkt. 1, Cmplt. ¶22.

Moreover, the City Attorney refused to answer a straightforward question from one citizen concerning whether the Bubble Zone would prohibit even an individual standing still within the buffer zone from engaging in oral protest, education, or counseling or offering literature, thereby subjecting such individual to possible arrest (or citation). Instead, the City Attorney asserted that the matter would have to be discussed with the police department and "would fall under the attorney-client privilege and needs to be explored on a case-by-case basis."[3]

Indeed, the City's primary rationale for the law seems to have been a cathartic exercise of political rage against the *Dobbs* decision, and a direct flouting of recent Supreme Court precedents undermining the constitutionality of Bubble Zones as previously upheld in *Hill*. As one

---

[3] *See* Video of City Council meeting of January 10, 2023: video clip for Agenda Item 8.3 at 40:26 – 40:46, https://carbon-daleil.new.swagit.com/videos/226879

councilperson stated on the record here: "The Supreme Court, unfortunately, is now just a lawless and partisan institution . . . Those decisions, especially the *Dobbs* one over the summer is [sic] a raw exercise of naked political power. That's what we're dealing with, and that's unfortunate."[4]

The Bubble Zone, on its face, inflicts irreparable injury to the First and Fourteenth Amendment rights of Coalition Life and others by effectively prohibiting sidewalk counseling without the prior consent of the listener, thereby creating a widespread ban on "unwanted" pro-life speech, under pain of fines and imprisonment. Dist. Ct. Dkt. 1-1 at 5. Defendant has enforced and will continue to enforce the Bubble Zone through its officers, servants, agents, and employees, unless and until it is judicially overturned. Dist. Ct. Dkt. 1, Cmplt. ¶25.

Accordingly, Coalition Life commenced the action below on May 16, 2023, seeking declaratory and permanent injunctive relief against the Bubble Zone. Dist. Ct. Dkt. 1 at 13. On June 9, 2023, the City filed a motion to dismiss the Complaint under Rule 12(b)(6), relying on *Hill* and this Court's recognition that, despite its infirmities, *Hill* remains controlling. Dist. Ct. Dkt. 14. On the same date, Plaintiff filed its opposition to

---

[4] Id. at 44:55 (Councilperson Mr. A. Loos).

the motion, noting *Hill's* infirmities and its probable demise, but conceding that *Hill* and *Price* did control the outcome of the motion in the District Court. Dist. Ct. Dkt. 15 at 6. On July 6, 2023, the District Court, accordingly, granted the motion to dismiss, but also noted that "[i]ndeed, Coalition Life points out that the holding in *Hill* has eroded through the years, most recently being cited by the Supreme Court for 'distort[ing] First Amendment doctrines.'" A.2 (quoting *Dobbs*, 142 S. Ct. at 2276 & n.65). This timely appeal followed. Dist. Ct. Dkt. 17.

## SUMMARY OF ARGUMENT

The City of Carbondale, Illinois adopted an amended local ordinance making it a criminal offense to knowingly "approach" another person *"for the purpose of* passing a leaflet or handbill to, displaying a sign to, or engaging in oral protest, education, or counseling with such other person in the public way within a radius of 100 feet from any entrance door to a hospital, medical clinic or healthcare facility." (emphasis added). Under the Supreme Court's anomalous decision in *Hill v. Colorado*, upholding a substantially identical "bubble zone" ordinance and applying only intermediate scrutiny, the Carbondale ordinance would be valid. Accordingly, the District Court, constrained by

*Hill*, dismissed Coalition Life's Complaint under Rule 12(b)(6).

But, as this Court has recognized in *Price v. City of Chicago*, 915 F.3d 1107, 1117 (7th Cir. 2019), *Hill* is "incompatible with current First Amendment doctrine" as explained and clarified by the Supreme Court's post-*Hill* decisions in *Reed v. Town of Gilbert* and *McCullen v. Coakley*. *Id.* at 1117. Under that current doctrine the Carbondale ordinance would fail strict scrutiny, given the "function or purpose" test for content-based discrimination as clarified by *Reed* and *McCullen*, as well as intermediate scrutiny. And the Supreme Court itself, in the *Dobbs* decision, overruling *Roe v. Wade*, singled out the decision in *Hill* as *the* example of how *Roe* "distorted First Amendment doctrines." Thus, Carbondale's Bubble Zone is unquestionably imposing ongoing and actual irreparable harm on Coalition Life, as explicitly confirmed by *Dobbs*.

Nevertheless, failing the formal overruling of *Hill* by the Supreme Court itself, which appears imminent, Coalition Life "must seek relief in the High Court." *Price,* 915 F.3d at 1119. Hence this appeal.

## ARGUMENT

I. The City of Carbondale's Bubble Zone Ordinance violates the First Amendment as a Content-Based Speech Restriction that Fails Strict Scrutiny, as well as intermediate scrutiny, under Supreme Court precedent as clarified post-Hill v. Colorado, which must be overruled.

Public rights-of-way have, from "time out of mind, [] been used for the purposes of assembly, communicating thoughts between citizens, and discussing public questions." *Hague v. Comm. for Indus. Org.*, 307 U.S. 496, 515 (1939). And "speech on public issues . . . is entitled to special protection." *Snyder v. Phelps*, 562 U.S. 443, 452 (2011) (internal quotes omitted).

But in *Hill*, the Supreme Court upheld Colorado's eight-foot bubble zone despite its flagrant disregard of these values. The Court deemed the law content-neutral because (a) it "was not adopted because of disagreement with the message the speech conveys," and (b) does not restrict speech based on viewpoint or "subject matter," even if it required a supposedly "cursory examination" of speech to determine if it was for the prohibited "purpose of . . . engaging in oral protest, education, or counseling." *Hill*, 530 U.S. at 719-20, 722-23. *Hill* also held that the bubble zone

satisfied intermediate scrutiny because it was narrowly tailored to protect the supposed "right to be let alone." *Id.* at 716, 726-30.

In *McCullen v. Coakley*, however, which involved a statutory 35-foot anti-speech buffer zone around the driveways or entrance of abortion facilities, the Supreme Court reaffirmed the principle that public streets and sidewalks "remain one of the few places where a speaker can be confident that he is not simply preaching to the choir" and "a listener often encounters speech he might otherwise tune out," which "is a virtue, not a vice." 573 U.S. at 478. *McCullen* recognized that a speech restriction is content-based "if it require[s] enforcement authorities to examine the content . . . to determine whether a violation has occurred," or if it is concerned with the "undesirable effects that arise from . . . listeners' reactions to speech," such as "caus[ing] offense or ma[king] listeners uncomfortable" outside abortion clinics. *Id.* at 481. The Court went on to find the buffer zone in that case content-neutral only because it governed *where* people spoke, not *what* they said. *Id.* at 479-80.

But *McCullen* nonetheless held that the zone failed intermediate scrutiny as it "compromise[d] petitioners' ability to initiate the close, personal conversations that they view as essential to 'sidewalk counseling',"

16

and "made it substantially more difficult" to "distribute literature to arriving patients," including "as drivers turn into the parking lots." *Id.* at 488. *McCullen* recognized that "handing out leaflets [on] a politically controversial viewpoint is the essence of First Amendment expression," and that sidewalk counselors "seek not merely to express their opposition to abortion, but to inform women of various alternatives and to provide help in pursuing them." *Id.* at 488-89. The government failed to show that draconian burdens on this speech were necessary to protect public safety outside abortion clinics, in part because "existing local ordinances," "general criminal statutes" and targeted injunctions already furthered that interest. *Id.* at 490-494.

One year later, the Supreme Court further clarified the standard for determining whether a speech restriction is content-based, and thus subject to strict scrutiny, holding that the restriction "is content based if [it] applies to particular speech because of the topic discussed or the idea or message expressed." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015). This "requires a court to consider whether a regulation of speech 'on its face' draws distinctions based on the message a speaker conveys," whether by its "subject matter" *or* its "*function or purpose.*" *Id.* at 163-

164 (emphasis added). The Court thus struck down a sign ordinance facially distinguishing "Temporary Directional Signs," "Political Signs," and "Ideological Signs." The Court rejected the lower court's reliance "on this Court's decision in *Hill v. Colorado*" in finding the law content-neutral merely because the town "did not adopt its regulation [] because it disagreed with the message conveyed." *Id.* at 162-63, 164-72. The Supreme Court clarified that it "is incorrect" that a benign governmental purpose is relevant "when a law is content based on its face." *Id.* at 166-67.

In *Price*, this Court acknowledged that "*Hill* started from the premise that '[t]he principal inquiry in determining content neutrality . . . is whether the government has adopted a regulation of speech because of disagreement with the message it conveys,'" but "[a]fter *Reed* that's no longer correct. We now know that the first step in the content-neutrality inquiry is to ask whether the challenged law is 'content based on its face.'" 915 F.3d at 1117 (internal citations omitted).

As this Court explained, on the issue of content-neutrality, *Reed* makes clear that "a law is content based if it draws 'more subtle' facial distinctions like those that 'defin[e] regulated speech by its function or

18

purpose.' . . . And divining purpose clearly requires enforcement authorities 'to examine the content of the message that is conveyed.' How else could the authorities distinguish between a sidewalk counselor (illegal) and a panhandler, a pollster, or a passerby who asks for the time (all legal)?" *Id.* at 1118 (internal citations omitted).

The result, this Court rightly observed, is that the Supreme Court has "'effectively abolishe[d] any distinction between content regulation and subject-matter regulation. Any law distinguishing one kind of speech from another by reference to its meaning now requires a compelling justification.'" *Id.* (quoting *Norton v. City of Springfield*, 806 F.3d 411, 412 (7th Cir. 2015)).

Moreover, this Court further explained that the *McCullen* decision also "emphasized that":

> a law is content based if it is 'concerned with [the] undesirable effects that arise from the direct impact of speech on its audience or listeners' reactions to speech.' Yet *Hill* repeatedly cited concern for listeners' reactions as an *acceptable justification* for Colorado's bubble-zone law. . . . The bubble-zone law upheld in *Hill* was aimed in substantial part at guarding against the undesirable effects of the regulated speech on listeners. After *McCullen* that's not a content-neutral justification.

*Id.* (cleaned up) (emphasis in original). Finally, as this Court observed concerning *McCullen*'s narrow-tailoring analysis: "*Hill*'s narrow-

tailoring analysis conflicts with *McCullen*'s insistence that 'the government must demonstrate that alternative measures that burden substantially less speech would fail to achieve [its] interests, not simply that the chosen route is easier.'" *Id.*

Accordingly, as this Court concluded, while *Hill*, remains controlling until the Supreme Court formally overrules it, *Hill* is nonetheless "incompatible with current First Amendment doctrine as explained in *Reed* and *McCullen*." *Price*, 915 F.3d at 1117.

Under *Reed* and *McCullen*, Carbondale's criminalization of any "approach" to a person within eight feet "*for the purpose of* . . . engaging in oral protest, education, or counseling," without the person's affirmative consent, expressly restricts speech based on its *substantive* "*purpose*" and so is blatantly content-based.

Not to the contrary is *City of Austin, Texas v. Reagan Nat'l Advert. of Austin, LLC*, 142 S. Ct. 1464, 1472-73. (2022), upholding an ordinance distinguishing between on- and off-premises signs as content-neutral even though it requires enforcers to read signs to determine whether they direct viewers to off-premises locations. The Court held that the ordinance does "not single out any topic or subject matter for differential

treatment," but requires review of a sign's message "only to the extent that it informs the sign's relative location," while its "*substantive* message is irrelevant." *See id.* at 1472-73. *City of Austin* thus affirms the "substance or purpose" test for determining content-based discrimination. Moreover, in response to Justice Thomas's observation (joined by Justices Barrett and Gorsuch) that the majority "risk[s] resuscitating *Hill*," *id.* at 1492 (Thomas, J., dissenting), the majority specifically clarified that "we *do not* . . . 'resuscitat[e]' a decision we do not cite." *Id.* at 1475 (emphasis added).

Furthermore, the Bubble Zone was adopted precisely because of an improper concern with the impact or effect on listeners of pro-life advocacy. *McCullen*, 573 U.S. at 479-480. *See* Dist. Ct. Dkt. 1, Cmplt. ¶17 & Dist. Ct. Dkt. 1-2 (City citing daily "protests" at "reproductive health care facilities"); Dist. Ct. Dkt. 1, Cmplt., ¶19 (extending radius of no-speech zone from 50 feet to 100 feet because a 50-foot radius "doesn't even get you off of the parking lot" of the City's abortion facilities); Dist. Ct. Dkt. 1-4 at 7 (Alamo Women's Clinic, accessed through Synergy Therapeutic Group); and id. at 22 (P. Choices Center for Reproductive Health)

(showing 50-foot radius would only cover private parking lots of City's abortion facilities).

Accordingly, under *Reed* and *McCullen*, the Bubble Zone would have to undergo strict scrutiny, which it fails because its application to all health clinics throughout the City, and its express prevention of pure speech far short of disorderly conduct (including because such speech is allegedly "unwanted" or controversial), clearly is not the *least* restrictive means in furtherance of a compelling interest. *See Thomas v. Rev. Bd. of Indiana Emp. Sec. Div.*, 450 U.S. 707, 718 (1981); *Brown v. Ent. Merchants Ass'n*, 564 U.S. 786, 799 (2011); *see also Texas v. Johnson*, 491 U.S. 397, 414 (1989) (it is a "bedrock principle underlying the First Amendment" that "government may not prohibit the expression of an idea simply because [it] finds the idea itself offensive or disagreeable").

Even if it were not content-based but rather facially neutral, the Bubble Zone would also flunk the test of intermediate scrutiny. Restricting Plaintiff from peacefully approaching others on the public rights-of-way to distribute a leaflet or counsel on abortion alternatives (outside any health clinic in the city, no less) self-evidently "burden[s] substantially more speech than is necessary" to further the purported interest in

preventing clinic trespasses or disorderly conduct, *McCullen*, 573 U.S. at 486 (internal quotes omitted), and is not "actually necessary to the solution" of the purported government concern. *Brown*, 564 U.S. at 799. Carbondale also ignored the preferential option "of targeted injunctions as alternatives to broad, prophylactic measures," *McCullen*, 573 U.S. at 492, as available under the Freedom of Access to Clinics Entrances ("FACE") Act, 18 U.S.C. § 248. It additionally "fail[ed] to look to less intrusive means of addressing its concerns," like "available generic criminal statutes forbidding . . . trespass." *Id.* "Nor has it shown that it considered different methods that other jurisdictions have found effective." *Id.* at 494.

The Bubble Zone further fails intermediate scrutiny because there is no evidence Coalition Life or any other pro-life sidewalk advocates have violated any law in connection with their speech. Dist. Ct. Dkt. 1, Cmplt. ¶109.)[5] Most instructive on this point is *Schenck v. Pro-Choice Network*

---

[5] The City asserted below, without record support, that the information and practical assistance Coalition Life and its sidewalk counselors peacefully offer those considering abortion is "interfering with the rights of persons to be free in choosing the type of medical care they wish to seek." Dkt. 14 at 2. The City also tarred Coalition Life, again without support, with alleged "numerous occasions around the Country in which interactions between medical facility staff, patients, and protesters have turned

*of Western New York*, 519 U.S 357 (1997). There the Supreme Court, applying only intermediate scrutiny, upheld an *injunctive* (not statutory) 15-foot buffer-zone around clinic doors and driveways against *particular defendants* who had engaged in physical obstruction, but *reversed* the injunction's prohibition of the same defendants' *non*-obstructive leafletting and counselling. *Schenck*, 519 U.S. at 380-81. That distinction alone dooms the Bubble Zone's *prophylactic* content-based restrictions on innocent parties under intermediate, let alone strict, scrutiny. As this Court observed in *Price* regarding *McCullen:*

> Recall *McCullen*'s exhortation against the use of broad prophylactic regulations in speech-sensitive zones: "A painted line on the sidewalk is easy to enforce, but the prime objective of the First Amendment is not efficiency . . . . Given the vital First Amendment interests at stake, it is not enough for Massachusetts simply to say that other approaches have not worked." In stark contrast, *Hill* specifically *approved* the "bright-line prophylactic" aspect of Colorado's bubble-zone law *precisely because* other less restrictive measures—e.g., laws against harassment and breach of the peace—were harder to enforce.

---

violent and disorderly," claiming that, in view of these supposed "occasions," the Bubble Zone was needed to "preserve the peace of the Community as a whole." Id. These are not allowable reasons to restrict the protected speech of Coalition Life and its sidewalk counselors in Carbondale, Illinois.

*Price*, 915 F.3d at 1118–19 (quoting *McCullen*, 134 S.Ct. at 2540 and *Hill*, 530 U.S. at 729) (emphasis in original).

Therefore, under *Reed* and *McCullen* the Bubble Zone cannot survive strict or intermediate scrutiny. Yet, despite recognizing that "*McCullen* and *Reed* have deeply shaken *Hill*'s foundation," this Court was constrained to hold that "the case [*Hill*] remains on the books and directly controls here." *Id.* at 1119. That remains true even though, as noted above, after this Court's decision in *Price*, the Supreme Court in *Dobbs* cited *Hill* as *the* premier example of how *Roe* "distorted First Amendment doctrines," 142 S. Ct. at 2276 & n.65, thus further signaling its imminent demise.

For all these reasons, Plaintiff argues that *Hill* and *Price* were wrongly decided, are irreconcilable with intervening precedent, and should be overruled by the Supreme Court and this Court respectively. Before *Dobbs*, *Hill* was on life support. After *Dobbs*, *Hill*'s intubation has been removed and it cannot be sustained under any theory. Plaintiff is suffering actual and ongoing irreparable harm as a result.

Nevertheless, because Carbondale's bubble zone ordinance is nearly identical to the one at issue in *Price*, and because the claims asserted by

Coalition Life here, under the First and Fourteenth Amendment and related provisions of the Illinois Constitution, are identical to the claims of the plaintiffs in *Price*, *see* 915 F.3d at 1110, Plaintiff must concede that *Price* precludes reversal of *Hill* by this Court.

But *Price* does not preclude this Court's necessary send-off to the Supreme Court with a further acknowledgment of what *Price* itself declares, as made even clearer in *Dobbs*: that the anomaly of *Hill* cannot be reconciled with *Reed* and *McCullen* or indeed with the corpus of the Supreme Court's free speech precedents as a whole. Nor is this Court precluded from expressing the entirely appropriate view that *Hill* ought to be overruled for the sake of the integrity of our nation's tradition of robust protection for public forum speech under the First Amendment, without any exclusion for pro-life speech.

## CONCLUSION

The Bubble Zone cannot be sustained under current Supreme Court jurisprudence on public forum speech. *Dobbs* expressly and uniquely confirmed that Bubble Zones like Carbondale's impose ongoing irreparable harm on pro-life speakers. *Hill* must be overruled, and Carbondale's

Bubble Zone then invalidated by this Court, with direction to the District

Court to enter a permanent injunction against its enforcement.

Respectfully submitted,

/s/ Peter Breen
Peter Breen
THOMAS MORE SOCIETY
309 W. Washington St., Ste. 1250
Chicago, Illinois 60606
(312) 782-1680
pbreen@thomasmoresociety.org

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1.      This document complies with the type-volume limitation of Fed. R. App. P. 32(a) and Circuit Rule 32 because, excluding the parts of the brief exempted by Fed. R. App. P. 32, this brief does not exceed 30 pages.

2.      This document complies with the typeface and typestyle requirements of Fed. R. App. P. 32(a)(5)-(7) because this document has been prepared using Microsoft Word in 14-point Century Schoolbook font.

<u>/s/ Peter Breen</u>

## CIRCUIT RULE 30(d) STATEMENT

Pursuant to Circuit Rule 30(d), counsel certifies that all material required by Circuit Rule 30(a) and (b) are included in the Appendix.

<u>/s/ Peter Breen</u>

# APPENDIX

## TABLE OF CONTENTS TO APPENDIX

Memorandum Opinion and Order filed on July 6, 2023, Doc. 16......... A-1

Judgment Order filed on July 19, 2023, Doc. 23................................... A-3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

COALITION FOR LIFE ST.
LOUIS d/b/a COALITION LIFE,

               **Plaintiff,**

**v.**

**CITY OF CARBONDALE,
ILLINOIS,**

               **Defendant.**

**Case No. 23-cv-01651-SPM**

## MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

On May 16, 2023, plaintiff Coalition Life filed its Complaint for Civil Rights Violations, Injunctive Relief, and Declaratory Judgment against defendant, City of Carbondale "Carbondale" (Doc. 1). Specifically, Coalition Life raises numerous Constitutional challenges against Carbondale's newly enacted "Bubble Zone Ordinance" (Id.).

Pending before the Court is a Motion to Dismiss filed by defendant, City of Carbondale ("Carbondale"), which argues that dismissal is warranted as both Seventh Circuit and Supreme Court precedent bind this Court (Doc. 14); see also *Hill v. Colorado, et al.,* 530 U.S. 703 (2000); *Price v. City of Chicago*, 915 F.3d 1107 (7th Cir. 2019). In *Hill*, the Supreme Court upheld a similar "bubble zone" Colorado statute as a content-neutral time, place and matter restriction. *Hill*, 530 U.S. at 719-720. More recently, this Circuit upheld a similar "bubble zone" ordinance enacted by

Page **1** of **2**

A-1

the City of Chicago after holding that *Hill* remained good law and directly controlled the issue, even though *Hill* was decided more than twenty years ago and appears inconsistent with other Supreme Court decisions. *Price*, 915 F.3d at 1119 ("While the Supreme Court has deeply unsettled *Hill*, it has not overruled the decision. So it remains binding on us.").

It its response, Coalition Life maintains that Carbondale's abortion "bubble zone" ordinance flagrantly violates the Free Speech Clause of the First Amendment (Doc. 15). Indeed, Coalition Life points out that the holding in *Hill* has eroded through the years, most recently being cited by the Supreme Court for "distort[ing] First Amendment doctrines". *Dobbs v. Jackson Women's Health Org.,* 142 S.Ct 2228, 2276 & n. 65 (2022). Nevertheless, Coalition Life concedes that the *Price* and *Hill* decisions preclude Coalition Life from succeeding, unless and until *Price* or *Hill* are overruled (Doc. 15).

## CONCLUSION

For the reasons set forth above, defendant City of Carbondale's motion to dismiss is **GRANTED** in its entirety.

**IT IS SO ORDERED.**

**DATED: <u>July 6, 2023</u>**

<u>*s/ Stephen P. McGlynn*</u>
**STEPHEN P. McGLYNN**
**U.S. District Judge**

Page **2** of **2**

A-2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

COALITION FOR LIFE ST. LOUIS
d/b/a COALITION LIFE,

        Plaintiff,

v.

CITY OF CARBONDALE, ILLINOIS,

Defendant.

Case No. 23-cv-01651-SPM

### JUDGMENT IN A CIVIL CASE

This action came before the Court, District Judge Stephen P. McGlynn, for consideration of a Motion to Dismiss filed by defendant, City of Carbondale, Illinois (Doc. 14).

**IT IS ORDERED AND ADJUDGED** that pursuant to the Memorandum and Order dated July 6, 2023 (Doc. 16), said motion was granted in favor of Defendant. Plaintiff did not seek any other relief; therefore, this action is **DISMISSED** without prejudice, each party to bear own costs.

Accordingly, the Clerk of Court is directed to close this case.

**IT IS SO ORDERED.**

**DATED: July 19, 2023**

                **MONICA A. STUMP,**
                **Clerk of Court**

                By: *s/ Jackie Muckensturm*
                **Deputy Clerk**

**APPROVED: *s/ Stephen P. McGlynn***
              **STEPHEN P. MCGLYNN**
              **U.S. District Court Judge**

A-3